James and Calista SHEPARD, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 57–C–51.

United States District Court
E. D. Wisconsin.

June 11, 1958.

Robert E. Nelson, Green Bay, Wis., for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., and James P. Garland and Thomas J. McCoy, Jr., Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., and Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Plaintiff James Shepard is a member of the Potawatomie Indian tribe of Kansas, born in 1902 on the Potawatomie Reservation in Kansas. On May 23, 1905, Shepard was allotted 80 acres of land in the Kansas Reservation by certificate of allotment under the General Allotment Act of February 8, 1887, 24 Stat. 389, 25 U.S.C.A. § 331 et seq. Pursuant to the General Allotment Act, 25 U.S.C.A. § 348, this certificate of allotment provided:

"   *   *   *   that the United States of America, in consideration of the premises, has allotted, and by these presents does allot, unto the said *   *   *   [Shepard]   *   *   *   the land above described, and hereby declares that it does and will hold the land thus allotted (subject to all statutory provisions and restrictions) for the period of twenty-five years,

in trust for the sole use and benefit of the said * * * [Shepard] * * * or in case of his decease, for the sole use of his heirs, according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided,* That the President of the United States may, in his discretion, extend the said period."

The period of the trust allotment was extended from time to time, and in 1952 was still in effect as to Shepard as an original allottee. On or about September, 1952 Shepard contacted the Indian Agent and other governmental authorities and explained that he wished to sell the land in Kansas and use the proceeds to buy a home in Wisconsin, where he had lived and worked for many years. Accordingly, on September 23, 1952 the United States of America issued to Shepard a fee simple patent to the land in Kansas. This fee simple patent stated:

" * * * The land covered by this patent is not liable for any debt contracted prior to this date, as provided by Section 5 of the Act of February 8, 1887 (24 Stat. 388, 389), and the amendatory Acts of May 8, 1906 (34 Stat. 182) and June 21, 1906 (34 Stat. 325, 327)."

Section 5 of the Act of February 8, 1887 (24 Stat. 388, 389) is codified as section 348, Title 25 U.S.C.A. and provides, as indicated above in the certificate of allotment, that where the United States has allotted land to an Indian, holding the land in trust for such Indian, at the expiration of the trust period the United States will convey the land to the Indian " * * * in fee, discharged of said trust and free of all charge or incumbrance whatsoever * * *". The Act of May 8, 1906 (34 Stat. 182) is codified as section 349, Title 25 U.S.C.A. and provides in pertinent part:

" * * * That the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent * * *".

In October, 1952, very shortly after he had received the fee patent, Shepard sold the Kansas land for $5,200. The parties have stipulated that the land had a fair market value of $2,800 on March 1, 1913. Plaintiffs contend, the defendant has virtually admitted in its brief, and the court finds that the fair market value of the land on September 23, 1952, the day on which Shepard received the fee patent, was the same as the sale price in October, 1952, i. e. $5,200.

In March, 1953 plaintiffs filed a joint income tax return for 1952, reporting the sale of the land, showing a basis of $2,800 and a profit of $2,400. An income tax on this gain was paid. In 1954 plaintiffs filed a timely claim for refund, alleging that no tax was due on the sale of the land. The claim was disallowed, and suit was brought in this court.

The defendant contends that under the applicable sections of the Internal Revenue Code of 1939, particularly those dealing with recognition of capital gain and the basis for determining gain, the sale of the land by Shepard in October, 1952 produced a taxable gain, measured from the fair market value of the land on March 1, 1913 (see sec. 113(a) (14) of 1939 Code, 26 U.S.C.A. § 113(a) (14)). The defendant relies heavily upon the case of Dick v. Commissioner, 10 Cir., 1935, 76 F.2d 265, certiorari denied 296 U.S. 588, 56 S.Ct. 99, 80 L.Ed. 415. The question here is not whether a simple restriction upon alienation appended to a fee includes an exemption from federal income taxation. From 1905 until Sep-

tember 23, 1952 Shepard did not own the Kansas land in fee, but rather his interest was of a far more limited type. Squire v. Capoeman, 1956, 351 U.S. 1, 4, 76 S.Ct. 611, 100 L.Ed. 883.

Section 1 of the Act of February 8, 1887, the General Allotment Act, 24 Stat. 388 provided:

" * * * That in all cases where any tribe or band of Indians has been, or shall hereafter be, located upon any reservation created for their use, either by treaty stipulation or by virtue of an act of Congress or executive order setting apart the same for their use, the President of the United States be, and he hereby is, authorized, whenever in his opinion any reservation or any part thereof of such Indians is advantageous for agricultural and grazing purposes, to cause said reservation, or any part thereof, to be surveyed, or resurveyed if necessary, and to allot the lands in said reservation in severalty to any Indian located thereon in quantities as follows * * *".

This statute, as amended, is codified as section 331, Title 25 U.S.C.A. and there appears in substantially the form quoted above. Both sides to this lawsuit agree, as appears from their briefs, that various treaties were negotiated between the United States and the Potawatomie Nation prior to 1887 by which the Potawatomie were established on a reservation in Kansas. Shepard's Kansas land was part of such reservation and, therefore, came within the language of section 1 of the General Allotment Act, 25 U.S.C.A. § 331, as part of a " * * * reservation created * * * by treaty * * *". Also, as previously indicated, sections 348 and 349 of Title 25 U.S.C.A. apply to Shepard.

■ There is, therefore, no doubt that the land comes under the provisions of the General Allotment Act. This Act and the trust or allotment patent issued to Shepard thereunder in 1905 initially determine the tax consequences of the sale

in October, 1952. Squire v. Capoeman, supra, states at page 6, 351 U.S., at page 615 of 76 S.Ct.:

"We agree with the Government that Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed. But we cannot agree that taxability of respondents in these circumstances is unaffected by the treaty, the trust patent or the Allotment Act."

In the same case, 351 U.S. at pages 7–8, 76 S.Ct. at page 615, the Supreme Court ruled that the provision of the Allotment Act that at the end of the trust period the Indian was to receive the land " * * * free of all charge or incumbrance whatsoever * * *" was sufficient to include taxation. The defendant admits that under the Capoeman case, Shepard could not have been taxed on any income or gain from the sale of the land if it was sold while still under trust patent. Rev.Rul. 57–407, I.R.B. No. 1957–37, p. 8. However, here the defendant contends that when the sale is made under a fee patent, even though only a few days after the land has been released from trust, any gain is taxed, computing the gain from the value of the land when it was first allotted in trust or as adjusted by the Code, i. e. March 1, 1913. Such contention cannot stand when the government's fiduciary undertaking in relation to its Indian wards, set out in treaties, statutes, and case law, is remembered.

■ The defendant's argument that a tax should be imposed is based on two propositions: First, that after a patent in fee is issued to an allottee the land and income therefrom are subject to federal income taxation; and second, that for the purposes of the income tax the land carried a basis equal to its fair market value on March 1, 1913, as provided by the Internal Revenue Code. With the first of these propositions the

court agrees, on the authority of Squire v. Capoeman, supra, 351 U.S. at page 7, 76 S.Ct. at page 615. With the second, the court disagrees. Any such rule would fail to give effect to the provision " * * * free of all charge or incumbrance whatsoever * * * " and would be at variance with the Capoeman case:

" * * * Unless the proceeds of the * * * sale are preserved for respondent, he cannot go forward when declared competent with the necessary chance of economic survival in competition with others. This chance is guaranteed by the tax exemption afforded by the General Allotment Act, and the solemn undertaking in the patent. It is unreasonable to infer that, in enacting the income tax law, Congress intended to limit or undermine the Government's undertaking. To tax * * * under these circumstances would, in the words of the court below, be 'at the least, a sorry breach of faith with these Indians.' " 351 U.S. at page 10, 76 S.Ct. at page 617.

It is the opinion of the court that to give proper meaning to the provision " * * * free of all charge or incumbrance whatsoever * * * ", it is necessary that land transferred in fee to an Indian allottee under the General Allotment Act after its period of trust carry a basis for tax purposes immediately after the transfer no lower than the fair market value of the land at the time of transfer in fee. Squire v. Capoeman, 1956, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883, affirming 9 Cir., 1955, 220 F.2d 349, affirming Capoeman v. U. S., D.C.W.D. Wash.S.D.1952, 110 F.Supp. 924. In this case the court finds that such fair market value was the same as the sale price in October, 1952.

The parties are apparently agreed as to the amount of the refund and the amount of the statutory interest due thereon. The court adopts the stipulation of facts, together with the facts set forth above, as its findings of fact in this case and its conclusions of law are as set forth above.

Counsel for the plaintiffs is directed to prepare an order for judgment and judgment in conformity with this opinion, submitting them to counsel for the defendant for approval as to form and arithmetical computation only.